UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NEUROS CO., LTD and AVIATION )
AND POWER GROUP INC. d/b/a )
APG-NEUROS, INC., )
) Case No. 08-cv-5939
Plaintiffs, )
) Judge John W. Darrah
v. )
)
KTURBO INC., )
)
Defendant. )

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Neuros Co., Ltd. ("Neuros") and Aviation and Power Group Inc. d/b/a APG-Neuros, Inc. ("APG-Neuros"), brought this lawsuit, alleging that KTurbo Inc. ("KTurbo") has disseminated misinformation and false advertisements in a willful and malicious effort to disrupt Plaintiffs' businesses, destroy their goodwill, and damage their reputations. Presently before the Court is Plaintiffs' Motion to Exclude KTurbo's Expert, David Japikse.

### BACKGROUND

APG-Neuros and KTurbo compete in the North American market for commercial turbo blowers. APG-Neuros distributes Neuros-manufactured blowers, and KTurbo manufactures and distributes its own line of blowers. Aerodynamic efficiency, which relates flow rate (i.e., the volume of air per minute pushed through the unit) to power input (i.e., the energy needed for rotating the unit's blower wheel), is a principal area of competition in the turbo-blower market. Plaintiffs allege that KTurbo has falsely stated

that Plaintiffs "cheated" and committed "a crime" by making allegedly false statements about the aerodynamic and total efficiencies of Plaintiffs' blowers. KTurbo claims its accusations are truthful.

To support this claim of truthfulness, KTurbo retained Dr. David Japikse as an expert witness. Dr. Japikse reviewed two reports and arrived at the conclusion that "Neuros overstates its flow rate and efficiency by 2-7%." One report reviewed by Dr. Japikse, the CH2MHill report, was prepared by a third-party engineering firm. The other was prepared for APG-Neuros and the Napa, California Sanitation District. KTurbo intends for Dr. Japikse to testify about alleged errors associated with these reports. Plaintiffs argue that KTurbo has disregarded expert-disclosure deadlines and that KTurbo must be precluded from offering *any* testimony from Dr. Japikse.

The deadline for disclosing expert witnesses and producing expert reports under the original scheduling order in this case was July 13, 2009. (*See* Docket No. 33.) On that date, KTurbo produced a brief disclosure and "initial report" of Dr. Japikse. KTurbo claims that Dr. Japikse was not able to prepare a final report without documents KTurbo had requested through discovery and that Plaintiffs refused to produce those documents without a protective order. On September 15, 2009, the Court entered a Stipulated Protective Order.[1]

---

[1] As of that time, Plaintiffs' responses to KTurbo's discovery requests were overdue. Although Plaintiffs produced those overdue responses on September 23, 2009, KTurbo asserts that the vast majority of the documents produced by Plaintiffs were improperly designated under the Protective Order, such that KTurbo was not permitted to disclose them to Dr. Japikse. But KTurbo has not filed any motion with regard to improper designations under the Protective Order. Nor has KTurbo sought to extend the expert-disclosure deadlines on that basis. Nor has KTurbo identified specifically which

On October 6, 2009, the Court entered a Revised Scheduling Order to accommodate the discovery delays associated with the Protective Order. According to the terms of the Revised Scheduling Order, all responses to outstanding discovery requests had to be served by October 2, 2009; and KTurbo had to produce any additional expert reports by October 5, 2009. Plaintiffs were ordered to depose KTurbo's experts by November 23, 2009, and to disclose any rebuttal expert witnesses and produce any rebuttal expert reports by December 14, 2009. KTurbo was ordered to depose Plaintiffs' rebuttal experts by January 15, 2010, the date set for the close of all discovery. A bench trial was scheduled for June 7, 2010.

By October 12, 2009, KTurbo had yet to produce any additional report from Dr. Japikse, so Plaintiffs' counsel sent an email to KTurbo's counsel, asking about the status of the report and suggesting dates during the week of November 16 for Dr. Japikse's deposition. KTurbo's counsel responded and stated that Dr. Japikse would not be able to deliver his final report until October 19, 2009. The parties agreed on November 18, 2009, as the date for Dr. Japikse's deposition.

On October 19, 2009, KTurbo's counsel emailed Plaintiffs a copy of what she characterized as "Dr. Japikse's Supplemental Expert Report." By letter dated October 22, 2009, Plaintiffs identified multiple perceived deficiencies in Dr. Japikse's report and demanded that they be remedied by October 26, 2009, under threat of filing a motion to exclude Dr. Japikse from testifying at trial. In that same letter, Plaintiffs also

---

untimely produced documents prevented Dr. Japikse from rendering a timely opinion and how those documents were relied upon by Dr. Japikse in doing so. To the contrary, it would appear from KTurbo's Response Brief that some of this information was available from public sources. (Resp. Br. at 3.)

3

indicated a desire to reschedule Dr. Japikse's deposition. Through follow-up correspondence, KTurbo agreed to schedule the deposition for December 4, 2009, even though that date was after the deadline imposed by the Revised Scheduling Order.

On October 26, 2009, in response to Plaintiffs' October 22 letter, KTurbo provided the following supplemental documents: (1) "Defendant's Supplement to Expert Disclosure, with index of documents made available to Dr. Japikse for review, as appendix"; (2) some additional documents reviewed by Dr. Japikse; and (3) part of a contract between KTurbo and Dr. Japikse, disclosing Dr. Japikse's compensation. KTurbo advised it was still awaiting the signed copy of Dr. Japikse's report and Dr. Japikse's supporting calculations and promised to forward them to Plaintiffs upon their arrival.

On October 30, 2009, at 6:10 p.m. EST, KTurbo transmitted the following additional materials to Plaintiffs: (1) executed signature pages from Dr. Japikse, (2) an 89-page presentation titled "Review of Neuros' Technical Representations (supporting worksheets and notes)," and (3) a 50-page Excel spreadsheet containing all of Dr. Japikse's technical calculations. Plaintiffs filed the instant motion approximately thirty minutes later.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(a)(2) requires automatic disclosure of the identity of expert witnesses accompanied by a written report prepared and signed by the witness. The report must contain the following items:

> (i)     a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the data or other information considered by the witness in forming them;
(iii) any exhibits that will be used to summarize or support them;
(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
(v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and
(vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). "A party must make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(C).

Failure to comply with these requirements can result in sanctions under Rule 37:

If a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). The rule goes on to provide that the court may order other sanctions "[i]n addition to or instead of" preclusion. *Id.* Sanctions are "automatic and mandatory unless the offending party can establish that its violation of Rule 26(a)(2) was either justified or harmless." *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 641 (7th Cir. 2008) (*Ciomber*).

## ANALYSIS

Plaintiffs argue that KTurbo missed the October 5 deadline for disclosure of its expert report, that its report remains deficient even as supplemented, and that exclusion of Dr. Japikse is thus warranted as a sanction. KTurbo argues that its tardy disclosure was justified and harmless and that Dr. Japikse's report is now complete.

5

By the express terms of the Revised Scheduling Order entered on October 6, 2009, KTurbo was required to provide a supplemental expert report by October 5, 2009. In other words, it was due the day before the order was actually entered. KTurbo undeniably missed that deadline. Plaintiffs claim the retroactive deadline was the result of a scheduling issue that caused the motion hearing to occur later than originally noticed and that KTurbo should still be held accountable for the October 5 deadline. (Pl. Mot. at 4 n.3.) But this "scheduling issue" appears to be Plaintiffs' failure to file a separate notice of motion at the time the motion was filed. The first hearing was scheduled for October 6, 2009. (Dkt. Nos. 48, 50.) At any rate, the interparty correspondence submitted in conjunction with the instant motion reveals KTurbo informed Plaintiffs it would not be able to provide Dr. Japikse's report until October 19, 2009; and it appears that Plaintiffs did not object. Because the October 5 deadline was impossible to meet at the time it was ordered and Plaintiffs did not object when KTurbo agreed to provide a report two weeks later, the Court views this particular delay as justified and will deem October 19, 2009, to be the deadline by which KTurbo was required to provide Dr. Japikse's supplemental report.[2]

As promised, KTurbo did provide a supplemental report on October 19, 2009. The problem, as KTurbo admits, is that the report was incomplete. (KTurbo Resp. at 5.) On October 22, 2009, Plaintiffs sent KTurbo a letter outlining a number of perceived

---

[2] Plaintiffs also make several references to Dr. Japikse's "initial report" from July 13, 2009. But that report is not at issue for purposes of the present motion. Although the original Scheduling Order required expert disclosures by that date, the schedule was later revised at the agreement of all parties. Plaintiffs do not and cannot claim any prejudice stemming from the July 13 report.

deficiencies, which KTurbo acknowledged by providing supplemental information on October 26 and 30. Because KTurbo's report was incomplete as of October 19, KTurbo failed to provide information required by Rule 26(a), and sanctions must be imposed under Rule 37(c) unless KTurbo can show that the failure was justified or harmless. *See Ciomber*, 527 F.3d at 641.

In an effort to avoid sanctions, KTurbo argues, "Neuros cannot establish that it has been harmed by any delay." (KTurbo Resp. at 7.) But Plaintiffs do not need to establish any harm; KTurbo must prove its absence. Because KTurbo had provided Dr. Japikse's preliminary report, the history of his past testimony, and a list of his scholarly writings and references, KTurbo claims there was no prejudice or unfair surprise to Plaintiffs. (KTurbo Resp. at 9.) KTurbo also argues that Plaintiffs had a complete report as of October 30, 2009, leaving Plaintiffs with over a month to prepare for Dr. Japikse's deposition and more than six months before trial.

Plaintiffs contend that they *are* prejudiced by a still-incomplete report, a lack of time to prepare for Dr. Japikse's November 23 deposition, and a lack of sufficient time to disclose a rebuttal report before December 14, 2009. With respect to the deposition date, Plaintiffs' argument is not persuasive. After receiving KTurbo's report on October 19, 2009, Plaintiffs requested a later date for Dr. Japikse's deposition, citing KTurbo's late disclosures *and Plaintiffs' own scheduling issues* as reasons for the request. After observing that Plaintiffs' suggested dates would place the deposition after the deadline imposed by the Revised Scheduling Order and securing confirmation that this delay *would not affect Plaintiffs' ability to conform to the deadlines regarding its*

7

*rebuttal experts*, KTurbo agreed to a deposition date of December 4, 2009. This agreement was reached before Plaintiffs filed the instant motion. Plaintiffs cannot now convincingly claim prejudice based on a deadline it had no intention of meeting.

Plaintiffs also claim prejudice due to a still-incomplete report complaining that KTurbo's disclosures were provided in eight "disparate parts" without any indication as to how those parts should be connected. Plaintiffs identify those parts as follows: (1) KTurbo's July 13 preliminary disclosure, identifying Dr. Japikse as an expert; (2) Dr. Japikse's July 13 "initial report"; (3) Dr. Japikse's October 19 report; (4) KTurbo's October 26 supplemental disclosure; (5) a page from a contract, purporting to show Dr. Japikse's compensation; (6) signed copies of two pages from Dr. Japikse's October 19 report; (7) a spreadsheet of calculations produced on October 30; and (8) a PowerPoint presentation produced on October 30. But assembly of those eight parts is not as enigmatic as Plaintiffs suggest. Items (1) and (2) have been supplanted by later disclosures and can be disregarded. Item (3) is Dr. Japikse's final report. Although the report was prepared on Dr. Japikse's letterhead, it does not contain a signature; item (6) constitutes signed pages, which may be substituted for the unsigned pages in item (3). Item (4), although prepared by KTurbo's counsel, provides the name of the only case in which Dr. Japikse has testified, a summary of Dr. Japikse's proposed testimony, and information about Dr. Japikse's compensation (through reference to item (5)). Items (7) and (8) constitute what KTurbo styles an "appendix" to Dr. Japikse's October 19 report. The question thus becomes, does (3)+(4)+(5)+(7)+(8) constitute a

complete report? The Court agrees with Plaintiffs and finds that it does not. The Court also agrees that Plaintiffs are entitled to a complete unified report signed by Dr. Japikse.

The primary prejudicial deficiency in Dr. Japikse's report seems to be a lack of supporting information. Although Dr. Japikse claims the CH2MHill report and the Napa study do not comply with testing procedures known as the PCT-10 protocols, his report contains no citations to either of those reports or to any specific portion of the PCT-10 standard. (Pl. Mot. at 7.) The report also references data from those reports that had to be "corrected" but does not indicate how or why that data was corrected. Nor does Dr. Japikse's report provide any information about how any efficiency ratings were tested or confirmed. (*Id.*) Furthermore, Dr. Japikse's report does not provide any specific references to any of the calculations Dr. Japikse used to arrive at his conclusions, even though those calculations were later provided as an appendix.[3]

Based on the deficiencies identified by Plaintiffs, KTurbo has failed to provide a complete report by October 30 – let alone by October 19 – and has offered no justification for that failure. Nor has KTurbo met its burden of showing that its ongoing supplementation and still-incomplete report are harmless to Plaintiffs. Under the express language of Rule 37(c), sanctions are warranted.

Plaintiffs advocate the complete preclusion of Dr. Japikse's testimony and argue that such a sanction is mandatory in this case. This suggestion is not surprising, as it

---

[3] Plaintiffs' Motion did not take KTurbo's October 30 supplement (received only thirty minutes before the motion was filed) into account. In their Reply, however, Plaintiffs do acknowledge that the materials provided on October 30 may "flesh[] out the expert's opinion with respect to the PCT-10 protocols," but they maintain that the report still fails to address other deficiencies and that it raises additional uncertainties and even offers new opinions for the first time. (Pl. Reply Br. at 3 & n.2.)

9

would likely cost KTurbo the ability to establish a key defense to Plaintiffs' allegations. KTurbo argues that Rule 37 gives the Court authority to order a lesser sanction.

Complete preclusion of Dr. Japikse's testimony is not the only possible sanction. Rule 37 provides, "If a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The plain language of this rule discloses two potential failures addressed with two corresponding consequences: One is a failure to provide information, for which the consequence is preclusion from using that information to supply evidence on a motion, at a hearing, or at trial. The other is a failure to identify a witness, for which the consequence is preclusion from using that witness to offer evidence on a motion, at a hearing, or at a trial. Here, Dr. Japikse was disclosed as a witness as early as July 13, 2009. So KTurbo's violation was not a failure to identify a witness but a failure to provide all of the information required by Rule 26(a)(2)(B). Therefore, the appropriate remedy is not to exclude the witness; the appropriate remedy is to exclude any information not timely disclosed.

The cases cited by Plaintiffs do not compel preclusion of Dr. Japikse's testimony in its entirety. In *Salgado v. Gen. Motors Corp.*, 150 F.3d 735 (7th Cir. 1998) (*Salgado*), the Seventh Circuit affirmed a district court's decision to exclude expert testimony as a sanction for failing to comply with the district court's schedule. Although the Seventh Circuit discussed the insufficiency of the "conclusory" report for purposes of evaluating whether its day-late production was harmless, the plaintiff did not produce *anything*

before the court's extended deadline, despite admonition that his case would get "dunked" if he failed to do so. *Id.* at 737-38. Because the plaintiff failed to produce *any* expert testimony by the deadline, all testimony by the proffered expert was excluded. *Id.*

Similarly, in *Ciomber*, the plaintiff missed its expert disclosure deadline by a day, despite five requests for discovery extensions and a warning from the district court that the last extension would be the final extension. 527 F.3d at 638. The plaintiff argued that producing the disclosure a day late was harmless. *Id.* at 641. In light of the past warnings, the district court held otherwise. *Id.*

In *Eurosteel Corp. v. M/V Millenium Falson*, No. 01 C 8817, 2003 WL 22424722, at *1 (N.D. Ill. Oct. 22, 2003), the parties were directed to exchange expert disclosures by June 19. The plaintiff complied; the defendant did not. *Id.* As of October 2, the defendant had yet to serve the plaintiff with any expert disclosures. *Id.* Because the defendant had the advantage of being in possession of plaintiff's disclosure and the plaintiff had nothing, the district court found the plaintiff was harmed by the defendant's failure and precluded its expert from testifying. *Id.* at *2.

And in *Finwall v. City of Chicago*, 239 F.R.D. 494, 497 (N.D. Ill. 2006), the district court granted a joint extension of discovery deadlines and admonished the parties that that extension would be the last. The discovery schedule did not provide specific deadlines for disclosing expert testimony but did provide that all discovery would close by a certain date. *Id.* Plaintiff filed its first expert report twelve business days before the close of discovery. *Id.* He then filed another one a week before the deadline and two more the day before the deadline. *Id.* The court quickly concluded that the last three

reports were disclosed too late to be of any use during the time set for discovery and excluded them. *Id.* at 501. Regarding the first disclosed expert, the court noted that his report was incomplete as initially provided two weeks before the deadline and that it was not complete until five days before the deadline. *Id.* at 502. Although the court believed it was "at least arguable that defendants could have deposed [the expert] within the final two weeks of discovery," it ultimately concluded that the plaintiff failed to establish such a tardy disclosure was justified or harmless and excluded that expert's testimony as well. *Id.* at 502-03.

In contrast to the aforementioned cases, KTurbo did identify Dr. Japikse and disclose a report in sufficient time for Plaintiffs to prepare for his deposition and plan for a rebuttal expert. Although Dr. Japikse's report is lacking in a number of respects – which must be rectified – Plaintiffs are not flying blind. It is clear that Dr. Japikse will opine as to alleged inaccuracies in two particular reports that have been used by Plaintiffs. It is also clear that Dr. Japikse claims the methods employed in those reports diverge from the PCT-10 protocols in a number of specifically identified ways. It would be reasonable for Plaintiffs to prepare to discredit Dr. Japikse's analysis and to offer expert testimony to validate the methods employed in the two disputed reports.

The *Salgado* court expressly acknowledged that less-severe sanctions may be appropriate: "The rule presents alternatives less severe than exclusion of the expert testimony, however. If the expert's report contains only incomplete opinions, the court may choose to restrict the expert's testimony to those opinions alone." 150 F.3d at 741 n.6 (citation omitted). Here, the Court finds such a restriction to be the best approach

in this situation and will not exclude Dr. Japikse's testimony in its entirety. Instead, the Court orders relief as follows:

1. KTurbo must compile its previous expert disclosures and provide a unified report to Plaintiffs within seven days of the entry of this Order. The report must contain each element required by Rule 26(a)(2)(B) in one document and be signed by Dr. Japikse. Except as permitted by paragraph 4, below, Dr. Japikse may not add any opinions not disclosed in his October 19 report. To the extent a new opinion was disclosed in the supplemental materials provided to Plaintiffs on October 30, that opinion shall not be part of Dr. Japikse's report. Dr. Japikse's report must contain cross references (identifying specific pages and lines or paragraphs, when practicable) to specific data and calculations used to support the opinions in his report.

2. To avoid prejudice to Plaintiffs, discovery is extended as follows: Plaintiffs have until December 18 to depose Dr. Japikse. Plaintiffs must identify any rebuttal experts and provide reports by January 4, 2010. KTurbo has until February 1, 2010, to depose Plaintiffs' experts. The deadline for the close of fact discovery remains as January 15, 2010.

3. All deadlines associated with dispositive motions will be postponed by two weeks: dispositive motions must be filed by February 19, 2010; responses are to be filed by March 12, 2010; and replies are due March 26, 2010. A status hearing for ruling will be held on May 6, 2010. The Court will not reschedule the deadline for submitting proposed findings of fact and conclusions of law or the trial date.

4. If KTurbo receives any new information that results in the need for supplementation under Rule 26(e), KTurbo is ordered to provide that information to opposing counsel within fifteen days of receiving that information. Failure to do so will result in Dr. Japikse's being precluded from offering that information as evidence in any motion, hearing, or at trial. This applies to newly discovered information only. KTurbo may not supplement Dr. Japikse's report with information that was previously available to KTurbo.

5. KTurbo must pay fees and costs associated with Plaintiffs' motion to exclude Dr. Japikse. Plaintiffs may submit a petition for fees and costs within fifteen days of the date of this order.

## CONCLUSION

KTurbo has failed to comply with Federal Rule of Civil Procedure 26 and with this Court's Revised Scheduling Order of October 6, 2009; and the Court finds that sanctions are warranted. However, the Court will not order the extreme remedy of preclusion requested by Plaintiffs. Plaintiffs' Motion to Exclude KTurbo's Expert, David Japikse, is therefore denied. Instead, the Court orders the alternative relief discussed above.

Date: 12-2-09

JOHN W. DARRAH
United States District Court Judge