UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NEUROS CO., LTD. and <br> AVIATION AND POWER <br> GROUP INC., <br> d/b/a APG-NEUROS, INC., <br> <br>         Plaintiffs, <br> <br>   v. <br> <br> KTURBO, INC., <br> <br>         Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 08-cv-5939 <br> ) <br> ) Judge John W. Darrah <br> ) <br> ) <br> ) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiffs, Neuros Co., Ltd. and APG-Neuros, Inc. (collectively, "Neuros"), filed a motion, seeking the entry of a revised judgment, finding in favor of Plaintiffs and against Defendant, KTurbo, on its Lanham Act and Illinois Uniform Deceptive Trade Practices Act ("DTPA") claims. Neuros's motion further seeks an award of attorneys' fees and injunctive relief. KTurbo opposes the motion, which has been fully briefed and is ripe for ruling. Neuros also separately moved to tax appellate costs and to release funds held in the registry of the Clerk of the Court.

### BACKGROUND

This suit was initiated in October 2008, when Neuros asserted six claims against KTurbo, including: claims for false and misleading statements in violation of the Lanham Act; violations of the DTPA; defamation *per se* and defamation *per quod*; common law trade libel/false light/business disparagement; and intentional interference with prospective economic relations. KTurbo alleged similar counterclaims against Neuros and also included one count under the Illinois Consumer Fraud and Deceptive Business Practices Act.

The parties were competing manufacturers of high-speed turbo blowers in North America. The blowers are used in the treatment of water at waste water treatment plants.

A bench trial was conducted from October 18, 2010 through October 22, 2010. On May 3, 2011, after post-trial briefs were submitted, the Court awarded judgment in favor of Neuros on its defamation *per se* claim, including $10,000.00 in compensatory damages and $50,000.00 in punitive damages, and in favor of Neuros on all of KTurbo's counterclaims. Judgment was awarded in favor of KTurbo on the remainder of Neuros's claims against it. The Court found that KTurbo's false comments regarding Neuros's business were not presented to members of the general public and denied Neuros's Lanham Act and DTPA claims on that basis. Bench Trial Mem. Op. and Order, May 3, 2011, at 27. On appeal, KTurbo challenged the finding of defamation on its part; Neuros challenged the dismissal of its Lanham Act and DTPA claims. *Neuros Co., Ltd. v. KTurbo, Inc.*, 698 F.3d 514, 519 (7th Cir. 2012) (*Neuros*).

The Seventh Circuit, in ruling on the cross-appeals, reversed the District Court in part, finding that Neuros's Lanham Act and DTPA claims should not have been dismissed and that KTurbo did, in fact, disseminate information to relevant potential customers necessary to support violations of the Lanham Act and DTPA. *Id.* at 521-23. The Seventh Circuit further held that, upon a determination of the Lanham Act and DTPA violations, "the case must be remanded for consideration of whether to award attorneys' fees – plus injunctive relief, authorized in the same section of the Act and also sought by Neuros and denied by the district court." *Id.* at 521.

Therefore, Neuros seeks an entry of judgment on those two claims, as well as an award of attorneys' fees and injunctive relief. In response to Neuros's motion, KTurbo opposes the requests for fees and injunctive relief, but presents no opposition to the entry of judgment on Neuros's Lanham Act and DTPA claims. Accordingly, the judgment entered May 3, 2011, is

2

amended and reversed in part, in favor of Neuros on its Lanham Act and DTPA claims, Counts I and II of the Complaint. The Court finds that KTurbo acted in violation of section 43(a)(1) of the Lanham Act, which addresses false advertising and provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which --
>
> * * *
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). The Court further finds that KTurbo violated the companion Illinois state statute governing false advertising, 815 ILCS 510/1 *et seq*. A determination of attorneys' fees and injunctive relief is therefore necessary.

## LEGAL STANDARD

*Attorneys' Fees*

Section 1117 of the Lanham Act addresses attorneys' fees and provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). An award of attorneys' fees is appropriate "if the opposing party's 'claim or defense was objectively unreasonable – was a claim or defense that a rational litigant would pursue only because it would impose disproportionate costs on his opponent.'" *Neuros*, 698 F.3d at 521 (quoting *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 626 F.3d 958 (7th Cir. 2010) (*Nightingale*)). Attorneys' fees are also appropriate where a party's violation of the Lanham Act is "especially egregious." *Neuros*, 698 F.3d at 521. A party's actions must be

exceptional to merit an award of attorneys' fees. A case is considered "exceptional" for purposes of awarding fees under the Lanham Act "if the losing party was the defendant and had no defense yet persisted in the trademark infringement or false advertising for which he was being sued, in order to impose costs on his opponent." *Nightingale*, 626 F.3d at 963-64.

Similarly, the DTPA provides that a court "may award . . . reasonable attorney's fees and costs to the prevailing party." 815 ILCS 505/10a(c). The DTPA is "a statute generally thought indistinguishable from the Lanham Act except of course in its geographical scope." *Neuros*, 698 F.3d at 523. The test for a determination of a case being exceptional enough to merit attorneys' fees is essentially the same under the Lanham Act and the DTPA. *Nightingale*, 626 F.3d at 961. "The purpose of the Deceptive Trade Practices Act is to prohibit unfair competition, and it is primarily directed toward acts that unreasonably interfere with another's conduct of his or her business." *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 893 N.E.2d 981, 995 (Ill. App. Ct. 2008) (*Chicago's Pizza*). "Costs or attorneys' fees or both may be assessed against a defendant only if the court finds he has wilfully engaged in a deceptive trade practice." 815 ILCS 510/3.

*Injunctive Relief*

The Lanham Act also specifically provides for the granting of injunctive relief, stating that a district court "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116(a). A plaintiff is not automatically entitled to injunctive relief. To be entitled to injunctive relief under the Lanham Act, a court considers "if the evidence shows that they have suffered an irreparable

injury for which there is no adequate legal remedy, the balance of hardships militates in favor of such relief and issuing an injunction will not disserve the public interest." *DeVry Inc. v. International University of Nursing*, 638 F. Supp. 2d 902, 910 (N.D. Ill. 2009) (citing *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (*eBay*)).

Likewise, under the DTPA, "A person likely to be damaged by a deceptive trade practice of another may be granted injunctive relief upon terms that the court considers reasonable." 815 ILCS 510/3. The Court may grant injunctive relief where appropriate . . . ." 815 ILCS 505/10a(c). To obtain a permanent injunction under Illinois law, a party "must prove it has a clear and ascertainable right in need of protection, irreparable harm will result if injunctive relief is not granted, and no adequate remedy at law exists." *Bogner v. Villiger*, 796 N.E.2d 679, 685-86 (Ill. App. Ct. 2003) (*Bogner*) (citing *Hasco Inc. v. Roche*, 700 N.E.2d (Ill. App. Ct. 1998)).

## ANALYSIS

*Attorneys' Fees Under the Lanham Act*

First, consideration of whether this case is so exceptional as to merit attorneys' fees is necessary. Under the Lanham Act and applicable case law, Neuros is entitled to attorneys' fees if it is apparent KTurbo's actions were egregious, or if KTurbo had no defense but persisted in its activities to impose costs on Neuros. *See Nightingale*, 626 F.3d at 963-64. "The determination of unreasonableness or egregiousness is to be made in the first instance by the district court." *Neuros*, 698 F.3d at 521.

Based on the evidence presented at the bench trial, and the findings made in the Memorandum Opinion and Order entered on May 3, 2011, the Court further finds that the defense presented by KTurbo to Neuros's claims was objectively unreasonable.

As the Seventh Circuit explained in its opinion, KTurbo presented information to customers and prospective customers that asserted that Neuros's claims of wire power, or its ratio of electrical current to work, were exaggerated. *Id.* at 518. KTurbo continued to make these statements about Neuros's claims regarding wire power and efficiency well after Neuros commenced this suit, on October 16, 2008. KTurbo's allegations regarding Neuros's purported efficiency ratings were literally false. *See* Bench Trial Mem. Op. and Order, May 3, 2011, at 15. Even after being made aware of Neuros's lawsuit against KTurbo regarding its false statements, it continued to make false representations regarding Neuros's blowers. *Id.* at 11 ("As late as October 25, 2009, [KTurbo's CEO] Lee wrote to a large group of KTurbo partners and supporters," asserted that APG-Neuros's blowers waste 15% more energy than they were claiming, and discussed his plan to "terminate Neuros completely."). "A 'literal' falsehood is bald-faced, egregious, undeniable, over the top." *Schering-Plough Healthcare Products Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 513 (7th Cir. 2009). The Seventh Circuit fairly characterized KTurbo's defense by describing it as "objectively unreasonable: KTurbo persisted in denying that the slide show and related marketing activities were deceptive long after it was evident that the denial was frivolous." *Neuros*, 698 F.3d at 521.

Moreover, the evidence presented at trial demonstrated that KTurbo sought to drive Neuros out of the market, and KTurbo's conduct served only to impose costs on Neuros. *See* Bench Trial Mem. Op. and Order, May 3, 2011, at 36 (KTurbo "stated its intent to 'break' and 'terminate' APG-Neuros; and continued to accuse APG-Neuros of cheating after its representatives advised it not to do so, after receiving a cease-and-desist letter, and after the initiation of this lawsuit."). For KTurbo to maintain its defense and continue to violate the Lanham Act in light of KTurbo knowing its claims regarding Neuros's efficiency were false was

6

both objectively unreasonable *and* egregious. Accordingly, Neuros is entitled to attorneys' fees under the Lanham Act, 15 U.S.C. § 1117(a).

*Attorneys' Fees Under the DTPA*

As explained above, attorneys' fees are awarded to the prevailing party under the DTPA under a similar analysis as the Lanham Act. *Neuros*, 698 F.3d at 523. Neuros is entitled to attorneys' fees under the DTPA if it is apparent KTurbo wilfully engaged in a deceptive trade practice. 815 ILCS 510/3. Wilful is defined as "voluntary and intentional, but not necessarily malicious." *Chicago's Pizza*, 893 N.E.2d at 998 (quoting Black's Law Dictionary 1630 (8th ed. 2004)).

KTurbo argues that while the statements it made about Neuros were not in good faith, KTurbo's conduct was not wilful. KTurbo's contention belies the record, as discussed above. The Court therefore further finds KTurbo acted with specific intent to thwart Neuros's success and "break" Neuros as competition. The Court also finds that KTurbo continued to attempt to deceive customers and others associated with Neuros well after Neuros had sent KTurbo a cease and desist letter and commenced this suit. *See Chicago's Pizza*, 893 N.E.2d at 998 ("[D]efendants continued to mislead consumers . . . after the complaint was filed. Therefore, we find because defendants 'wilfully engaged in a deceptive trade practice,' plaintiffs are entitled to reasonable attorney fees."). Upon review of the facts determined at trial and in conjunction with the Seventh Circuit's decision, Neuros is entitled to attorneys' fees under the DTPA, as well.

*Injunctive Relief Under the Lanham Act*

Neuros is entitled to injunctive relief, provided it can demonstrate it suffered irreparable injury for which there is inadequate legal remedy; that the balance of hardships weighs in favor of an injunction; and that an injunction will not harm the public interest. 15 U.S.C. § 1116(a);

*eBay*, 547 U.S. at 391. Based on KTurbo's Lanham Act violations, it is apparent that no adequate remedy at law exists to make Neuros whole; therefore, injunctive remedy is appropriate. The false statements made by KTurbo regarding Neuros's wire power and efficiency will have lingering effects on its business, because employees of potential customers could believe the false information KTurbo has disseminated.

Moreover, there is a "well-established presumption that injuries arising from Lanham Act violations are irreparable, even absent a showing of business loss." *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 16 (7th Cir. 1992) (*Abbott*) (further providing, "This presumption, it appears, is based upon the judgment that it is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damage to reputation and loss of goodwill, caused by such violations.") (citations omitted). Again, based on the trial evidence and previous findings, the Court finds Neuros is unable to quantify damages it sustained on this claim to adequately support an award of actual damages and that no adequate legal remedy exists. The Court further finds Neuros suffered irreparable harm to its business due to KTurbo's actions.

In balancing the hardships, it is further apparent that injunctive relief is an appropriate remedy. KTurbo will have no hardship in having to refrain from repeating its false statements to other potential customers, particularly in light of KTurbo's admission that "it has not been in the business of manufacturing and selling turbo blowers for more than two years" (Resp. at 14), and the Court so finds. Neuros has proposed a narrowly tailored request for corrective advertising by KTurbo that does not place a significant burden on KTurbo. *See Abbott*, 971 F.2d at 17 (finding corrective advertising to be a less severe remedy than others proposed). More importantly, because of the somewhat unique method of advertising in the industry, as discussed above and in the Court's May 3, 2011 Memorandum Opinion and Order and the Seventh Circuit's opinion,

without this kind of injunctive relief, it is reasonable that Neuros's business could continue to suffer hardship if the false statements about Neuros's business are not affirmatively corrected by KTurbo.

Finally, the Court finds the proposed injunctive relief does not disserve the public interest; rather, to enjoin KTurbo from continuing to spread false information and require KTurbo to provide corrective advertising to a relevant portion of consumers *serves* the public interest. Truthful advertising is "an interest that lies at the heart of the Lanham Act." *Abbott*, 971 F.2d at 19 (citing *Wojnarowicz v. American Family Association*, 745 F.Supp. 130, 141 (S.D.N.Y. 1990)). Therefore, injunctive relief is an appropriate remedy for Neuros with respect to KTurbo's Lanham Act violation.

*Injunctive Relief Under the DTPA*

Similarly, injunctive relief is an appropriate remedy under the DTPA. Under Illinois law, a party must demonstrate irreparable harm, no adequate remedy at law, and a clear and ascertainable right in need of protection to obtain an injunction. *Bogner*, 796 N.E.2d at 685-86. As discussed above, Neuros has established the irreparable harm it suffered and that no adequate remedy at law is available to it. Neuros has a clear and ascertainable right to be protected under the DTPA, for the reasons stated above. Therefore, Neuros is entitled to the same injunctive relief under the DTPA, as well.

*Taxing Appellate Costs and Releasing Registry Funds*

Finally, Neuros also moves to tax appellate costs and to release funds deposited by KTurbo in the Court's registry. This does not appear to be specifically opposed by KTurbo in its Response. Federal Rule of Appellate Procedure 39(e)(4) provides that "the fee for filing the notice of appeal" "are taxable in the district court for the benefit of the party entitled to costs . . .

." Neuros submitted a Bill of Costs, which indicated it paid a $455.00 fee in order to file its appeal. (Mot. to Tax App. Costs, Ex. A.) KTurbo is therefore ordered to pay to Neuros $455.00 in appellate costs.

On October 6, 2011, the Court entered an order, providing for KTurbo to submit a check in the amount of $94,193.89 to the Clerk of the Court for deposit into the Court's registry. (Dkt. No. 278, ¶ 1.) The Order further provided that if the Seventh Circuit found KTurbo to be liable to Neuros for any amount of monetary relief, the deposited amount shall be released to Neuros upon motion, following the issuance of the Seventh Circuit's mandate. (*Id.* ¶ 3.) The Seventh Circuit issued such a mandate, as explained above, and KTurbo is liable to Neuros for monetary relief, including the $60,000.00 in damages awarded on May 4, 2011, and the district court costs of $23,655.26 awarded on August 25, 2011. Furthermore, pursuant to 28 U.S.C. § 1961, KTurbo is liable for post-judgment interest on both the damage award and the costs award, at a rate of 0.22% for the damages award, since May 4, 2011, and 0.11% for the costs award, since August 25, 2011, until the awards are paid.

## CONCLUSION

Based on the foregoing, Neuros's Motion to Enter Revised Judgment is granted. The judgment entered May 3, 2011, is amended. Judgment is hereby entered in favor of Neuros on its Lanham Act and DTPA claims (Counts I and II of the Complaint).

It is therefore ordered Neuros shall be awarded attorneys' fees in an amount to be determined pursuant to Local Rule 54.3.[1]

---

[1] Note Local Rule 54.3 requires the parties to discuss and attempt to agree on the amount of attorneys' fees and costs prior to filing a motion for recovery of such fees and costs.

It is further ordered that a permanent injunction shall issue against KTurbo, its officers, employees, agents, and anyone working for, in concert with, or on behalf of KTurbo:

1. To refrain from publishing, circulating, emailing, making available, or otherwise distributing any confidential or proprietary Neuros documents, including but not limited to bid documents and the report entitled Factory Test/trip Report NX300 Turbo Blower;
2. To refrain from publishing, circulating, emailing, making available, or otherwise distributing any document that contains false, misleading, and/or deceptive statements regarding Neuros, its products, its business, its employees, or its customer or potential customer relationships, including without limitation the July 14, 2008 email described in the Complaint;
3. To refrain from, directly or indirectly, making any false or misleading representations of fact concerning Neuros, either orally or in writing, and including without limitation those made in the July 14, 2008 email described in the Complaint;
4. To refrain from wrongfully interfering with or disrupting any prospective economic relations of Neuros with any prospective customers through false, misleading, or deceptive statement or use of confidential or proprietary documents addressing Neuros, its businesses, or products; and
5. To issue corrective advertising under KTurbo's name and at KTurbo's expense, that advises every known recipient of the July 14, 2008 email and any other similar written or oral statements of the falsity of such written or oral statements.

KTurbo shall submit a proposed statement and list of recipients to the Court within 21 days of this order.

As discussed above, Neuros is awarded $455.00 in appellate costs and entitled to the award of damages and costs, including post-judgment interest at the rates expressed above. Neuros's motion to release the requested amounts from the Court registry is granted.

Date: April 17, 2013

_____
JOHN W. DARRAH
United States District Court Judge